NOTICE

Decision filed 09/08/20. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2020 IL App (5th) 170040-U

NO. 5-17-0040

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Franklin County. |
| | ) | |
| v. | ) | No. 12-CF-131 |
| | ) | |
| CASSIE R. MAYO, | ) | Honorable |
| | ) | Thomas J. Tedeschi, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Overstreet and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*:   This appeal from a judgment of conviction does not present any issue of arguable merit, and therefore appointed appellate counsel is granted leave to withdraw, and the judgment of conviction is affirmed.

¶ 2    Pursuant to a fully-negotiated plea agreement, the defendant, Cassie R. Mayo, pleaded guilty to robbery, and the circuit court sentenced her to probation. Subsequently, the State filed a motion to revoke her probation due to certain alleged violations of probation conditions. In accordance with an agreement between herself and the State, the defendant admitted the alleged probation violations, and the court sentenced her to imprisonment. Not long afterward, the defendant filed a motion to withdraw her admission to the probation violations. An attorney filed an amended petition to withdraw the admission. After a hearing, the circuit court denied the defendant's amended motion. The defendant appeals from that denial order. The defendant's

1

appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit, and on that basis OSAD has filed with this court a motion to withdraw as counsel and a memorandum of law in support ot the motion. See *Anders v. California*, 386 U.S. 738 (1967). This court granted the defendant ample opportunity to file a written response to OSAD's motion, or a brief, memorandum, etc., explaining why her appeal has merit, but she has not taken advantage of that opportunity. Having examined OSAD's *Anders* motion and memorandum, along with the entire record on appeal, this court agrees with OSAD that this appeal has no merit whatsoever. Accordingly, OSAD is granted leave to withdraw, and the judgment of the circuit court is affirmed.

¶ 3                                    BACKGROUND

¶ 4      In March 2012, the State filed a two-count information charging the defendant with robbery and burglary. In May 2012, the defendant, her appointed attorney David B. Garavalia, and an assistant state's attorney appeared before the circuit court. The attorneys informed the court that they had reached a plea agreement under which the defendant would plead guilty to robbery. The court admonished the defendant that robbery was a Class 2 felony with possible punishments that included imprisonment for 3 to 7 years or probation for up to 48 months, and the defendant indicated her understanding. The court admonished the defendant as to her right to plead guilty or not guilty, her right to a trial, whether by jury or by the court alone, her rights at trial, including the rights to confront and cross-examine witnesses, to call witnesses on her own behalf, and to testify or to remain silent, and the court further admonished the defendant on the presumption of innocence, the State's burden of proof, and the waiver of rights that results from a guilty plea, and the defendant indicated her understanding of all these various matters. The court also admonished

2

the defendant about her appeal rights, including the necessity for a timely motion to withdraw guilty plea, and she indicated her understanding.

¶ 5    Then, the attorneys described the terms of the plea agreement, which included the defendant's plea of guilty to robbery and a sentence of probation for 48 months, with conditions including a $1000 fine and a drug-and-alcohol evaluation, and dismissal of the burglary count. The defendant confirmed the stated terms of the plea agreement. Apparently reading from the information, the court admonished the defendant as to the nature of the robbery charge, and the defendant indicated her understanding. In response to queries from the court, the defendant reiterated that she understood the possible penalties and her rights, and she reiterated that she understood that a guilty plea would amount to a waiver of rights, including the right to a trial. In response to further queries from the court, the defendant confirmed that she wanted to plead guilty to robbery, that she had signed a written guilty plea, that she was acting freely and voluntarily, and that nobody had threatened her in any way in order to cause her to plead guilty.

¶ 6    The State provided a factual basis. Essentially, the defendant drove a getaway car after the robbery of a grocery store in West Frankfort. The court found the defendant's guilty plea knowing and voluntary and found the factual basis sufficient. In accordance with the parties' plea agreement, the court dismissed the burglary charge and imposed the agreed-upon 48-month probation sentence for robbery. After supplying the defendant with a copy of the probation order, the court warned the defendant about the possibility of probation revocation and the possible consequences of revocation, including imprisonment. The record includes the defendant's written plea of guilty.

¶ 7    In May 2013, the State filed a petition to revoke the defendant's probation, alleging various violations of probation conditions. In November 2015, the State filed another petition to revoke

3

probation, alleging that the defendant had violated five different conditions of her probation by, *inter alia*, failing to report to her probation officer during certain specified months, testing positive for certain specified drugs, and failing to make payments toward her fine.

¶ 8    On January 13, 2016, the defendant, her appointed attorney Kevin Popit, and the State appeared before the circuit court. The parties informed the court that they had agreed on a disposition of the November 2015 probation-revocation petition. Specifically, the defendant would admit to all of the violations alleged in that petition, and she would be sentenced to imprisonment for six years, followed by mandatory supervised release (MSR) for two years; in addition, she would pay outstanding fines, fees, and costs. The defendant confirmed these terms of the agreement.

¶ 9    Apparently reading from the November 2015 revocation petition, the court admonished the defendant as to each of the violations alleged therein, and the defendant indicated her understanding. The court admonished the defendant about the possible penalties for robbery, including imprisonment for three to seven years, to be followed by MSR for two years, and the defendant indicated her understanding of the possible penalties. The court further admonished the defendant that she had a right to a hearing before a judge, and that the State would have the burden of proving, by a preponderance of the evidence, the revocation petition's allegations. In response to the court's queries, the defendant indicated her desire to admit to the alleged probation violations and to waive her rights, and she indicated that she was acting freely and voluntarily, and that nobody had threatened her or had promised her anything outside the terms of the parties' agreement. She acknowledged signing a written admission. The State presented factual bases for the defendant's admission. The parties waived the preparation of a presentence investigation report. The court found the defendant's admission knowing and voluntary and sentenced the

4

defendant to six years of imprisonment and two years of MSR. Finally, the court admonished the defendant as to her appeal rights, and she indicated her understanding. The next day, the court entered a written sentencing order.

¶ 10 On February 11, 2016, the defendant filed through attorney Popit a "Motion to Admission to Petition [*sic*] to Revoke and Vacate Judgment Pursuant to Supreme Court Rule 604(d)." The defendant alleged, essentially, that attorney Popit had coerced her into admitting to probation violations, and she requested leave to withdraw her admission. In May 2016, the circuit court granted attorney Popit leave to withdraw as counsel for the defendant, due to the obvious conflict of interest.

¶ 11 Eventually, the court appointed attorney James E. Ford to represent the defendant in her attempt to withdraw her admission to the probation violations. In October 2016, the defendant filed through attorney Ford an amended motion to withdraw her admission. She claimed that attorney Popit, who had represented her in the probation-revocation proceedings, had made "misleading, incorrect and/or false" statements to her, had failed to discuss alternatives to accepting the State's offer of imprisonment for six years, and had "presented the [State's] offer to [her] in such a manner that [she] felt she had no other choice but to accept it," thus rendering her admission involuntary and unknowing.

¶ 12 On January 26, 2017, attorney Ford filed a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016). That same day, the circuit court held a hearing on the defendant's amended motion to withdraw her admission to the probation-revocation petition. The defendant testified that she and attorney Popit, at some time prior to her admission on January 13, 2016, discussed the State's offer that included a six-year prison sentence. She described the discussion as follows: "He told me that the state's attorney was tired of my crap and that if I fought

it, I was going to get seven years to the Department of Corrections." According to the defendant, Popit did not say anything more during their discussion; he did not discuss any alternatives to accepting the State's offer, such as an "open" admission, and he did not discuss the possibility of a prison sentence shorter than six years. As a result, the defendant thought that she did not have any choice but to accept the State's offer. For the State, attorney Popit testified that he met with the defendant at the county jail on the day before the scheduled revocation hearing and met with her very briefly at the courthouse on the day of the hearing. At the jail, he and the defendant discussed "options that [the defendant] had," including the option of an open admission to the revocation petition's allegations; they discussed possible outcomes, but he did not express a prediction that she would get the maximum prison sentence, or any particular sentence, if her probation was revoked after a contested hearing. The court, after hearing the arguments of counsel, denied the defendant's amended motion to withdraw her admission to the probation-revocation petition.

¶ 13 On February 1, 2017, the defendant filed a *pro se* notice of appeal, thus perfecting the instant appeal. Appointed counsel on appeal, OSAD, later filed an amended notice of appeal.

¶ 14                                  ANALYSIS

¶ 15 As noted previously, the defendant's appointed attorney in this appeal, OSAD, has concluded that this appeal lacks merit, and on that basis it has filed an *Anders* motion to withdraw as counsel and a memorandum of law in support of the motion. In its memorandum of law, OSAD identifies and discusses three issues that could potentially be raised in this appeal. Those potential issues are (1) whether attorney Ford's Rule 604(d) certificate was sufficient, (2) whether the defendant's guilty plea was voluntary and intelligent, and (3) whether attorney Popit provided the defendant with ineffective assistance during the probation-revocation proceedings.

¶ 16 The first potential issue identified by OSAD is whether attorney Ford's Rule 604(d) certificate—which Ford filed on the day of the circuit court's hearing on the defendant's amended motion to withdraw her admission to the probation-revocation petition—was sufficient. In its memorandum of law, OSAD quotes from Rule 604(d), quotes from the attorney's Rule 604(d) certificate, and concludes that the certificate conforms to the rule. Assuming, without deciding, that a Rule 604(d) certificate was required in this context (see *People v. Harris*, 392 Ill. App. 3d 503, 507-08 (2009)), OSAD is correct in its assessment of Ford's certificate. The certificate closely tracked the wording of Rule 604(d) itself.

¶ 17 The second potential issue identified by OSAD is whether the defendant's guilty plea was voluntary and intelligent. This court notes that the defendant herself never has suggested that her guilty plea was involuntary or unintelligent; she never filed a motion to withdraw her guilty plea. Assuming that this issue could be raised in this appeal (see *People v. Winston*, 316 Ill. App. 3d 618, 619-20 (2000)), this court concludes that the issue has no merit. As this court's summary of the May 2012 plea hearing makes clear, the circuit court fully complied with Illinois Supreme Court Rule 402 (eff. July 1, 1997). The court admonished the defendant as to the nature of the charges, the possible penalties, her right to plead guilty or not guilty, her right to a trial, her rights at trial, and the consequences of a guilty plea. See Ill. S. Ct. R. 402(a) (eff. July 1, 1997). Furthermore, the court, after carefully questioning the defendant and hearing her answers, reasonably determined that her guilty plea was voluntary, and not the result of threats or of promises apart from the plea agreement. See Ill. S. Ct. R. 402(b) (eff. July 1, 1997). This potential issue has no merit.

¶ 18 Furthermore, this court notes that the circuit court, immediately after accepting the defendant's guilty plea to robbery and imposing the agreed-upon probation sentence, complied

7

with Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001) by advising the defendant of her right to appeal and of the prerequisites for the exercise of that right.

¶ 19 OSAD's third and final potential issue is whether attorney Popit, who represented the defendant in the probation-revocation proceedings, provided the defendant with ineffective assistance during those proceedings. Essentially that issue was addressed at the January 26, 2017, hearing on the defendant's amended motion to withdraw her admission to the probation-revocation petition.

¶ 20 At that hearing, the defendant testified that attorney Popit had left her feeling as if she had no choice but to accept the State's proposed disposition of the probation-revocation proceedings, a disposition that involved her admitting to the alleged probation violations and being sentenced to imprisonment for six years. She felt that accepting the State's proposal was the only option available to her because Popit had told her that if she "fought" the revocation petition, she surely would be sentenced to prison for seven years, and because Popit did not discuss with her any alternative to accepting the State's proposed disposition. Contrary to the defendant's testimony, Popit testified that he and the defendant did in fact discuss various options available to her, including the possibility of an "open" admission to the probation-revocation petition, and he further testified that he never told the defendant that she surely would be sentenced to the seven-year maximum sentence, or any other particular sentence, if her probation was revoked after a contested hearing.

¶ 21 After hearing the testimonies of the defendant and attorney Popit, as well as the arguments of counsel, the court quoted from a transcript of the January 13, 2016, hearing at which the defendant admitted to the probation violations alleged in the State's revocation petition. Specifically, the court quoted passages wherein the defendant indicated that she was admitting to

8

the probation-revocation petition freely and voluntarily. The court commented that the defendant had been thoroughly admonished at the time she admitted to the probation violations. The court concluded that the defendant had failed to prove the claims presented in her amended motion to withdraw her admission to the probation-revocation petition, and the court therefore denied the amended motion.

¶ 22    This court does not see any error in the circuit court's denial of the defendant's amended motion to withdraw her admission to the probation-revocation petition. At the probation-revocation hearing, the circuit court thoroughly admonished and questioned her in accordance with Illinois Supreme Court Rule 402A (eff. Nov. 1, 2003) (admissions in proceedings to revoke probation). She admitted to the probation violations, and the court accepted her admission, only after she had given every indication that the admission was knowing and voluntary. At the January 26, 2017, hearing on the defendant's amended motion to withdraw the admission, the defendant portrayed Popit as an attorney who had given her short shrift, and who had led her to believe that she had no choice but to accept the State's offer and admit to the probation violations. However, Popit testified that he had presented the defendant with options on how she might respond to the probation-revocation petition. The circuit court, in its capacity as the trier of fact at the January 26, 2017, hearing, could properly have believed Popit instead of the defendant; the court certainly was not required to accept the defendant's testimony as true. See, *e.g.*, *People v. Hammond*, 45 Ill. 2d 269, 278 (1970) (where evidence is conflicting, the trier of fact ascertains the truth). This court does not find anything in the record on appeal that establishes deficient performance by attorney Popit or any prejudice flowing to the defendant. See *Strickland v. Washington*, 466 U.S. 668 (1984) (two-pronged test for ineffective assistance).

9

¶ 23                              CONCLUSION

¶ 24    This appeal does not present any issue of arguable merit. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.


¶ 25    Motion granted; judgment affirmed.