JUSTICE KARMEIER delivered the judgment of the court, with opinion. Chief Justice Thomas and Justices McMorrow, Fitzgerald, and Garman concurred in the judgment and opinion. Justice Kilbride concurred in part and dissented in part, with opinion. Justice Freeman dissented, with opinion. OPINION The respondent, J.T., admitted having committed the offense of criminal damage to property and was sentenced to 18 months’ probation. His probation was subsequently revoked and he was committed to the Illinois Department of Corrections, Juvenile Division (DOC), for an indeterminate term. On appeal, J.T. argued, inter alia, that the circuit court of Cook County had failed to properly admonish him pursuant to Supreme Court Rule 605 (188 Ill. 2d R. 605) when it sentenced him to probation. The appellate court agreed and remanded the cause to the trial court for proper admonitions. The State, as appellant, argues that the appellate court was without jurisdiction to hear any issue regarding J.T.’s guilty plea and sentence. We agree and vacate the judgment of the appellate court. I. BACKGROUND On August 6, 2001, the State filed a petition for adjudication of wardship against J.T., alleging that J.T. had committed the offense of criminal damage to property. Following a conference pursuant to Supreme Court Rule 402 (177 Ill. 2d R. 402), J.T. agreed to plead guilty in exchange for a sentence of probation. After admonishing J.T. of the consequences of pleading guilty, the trial court accepted the plea, entered a finding of delinquency, and continued the case for sentencing. On January 11, 2002, J.T. was sentenced to 18 months’ probation. The conditions of his probation included making restitution, attending TASC counseling, and attending school on a regular basis. The trial court then admonished J.T. about his right to appeal: “THE COURT: So also you have the right to appeal. If within the next thirty days — this starts the thirty-day period of grace between us — if within the next thirty days you become unhappy with the penalty I have imposed on you, you have the right to appeal to a higher court, to the appellate court, the court that supervises me. If you want to go up to that court, there is a procedure you have to follow. You first have to file a petition before me asking me to allow you to withdraw your admission. You file a petition saying you want to take everything back. If I agree with your petition, I will strike out this penalty. I will strike out the fact that you entered the plea of guilty. I will strike out the finding of guilty and you will have to start all over by going to trial before me. That’s the second chance that the law provides; but if I disagree with your petition and say, no, everything was done well. This is what we are supposed to leave it that way. Then it will go up to the higher court and they will look at everything. They will take this record this lady is typing up or transcribing and they will read everything that was said in the courtroom by the attorneys, by you, by me, to see whether or not your rights were violated in any way. Do you understand that? [J.T.]: Yes, your Honor. THE COURT: All right. Very well. So — and they will look it over for you and also if you go up on appeal and you are unable to hire an attorney to represent you, the Court will appoint an attorney for you free of charge. That’s your right to have an attorney if you can’t afford one. Also, we will provide you with a free copy of the transcript. Do you understand me, [J.T.]? [J.T.]: Yes, your Honor. THE COURT: All right. Appeal rights are given. Any question about your appeal rights? [J.T.]: No.” J.T. filed neither a motion to withdraw his guilty plea nor a notice of appeal. On March 27, 2002, the State filed a petition for supplemental relief alleging that J.T. had violated the conditions of his probation by failing to attend school on numerous occasions, and that he had committed several other substantive offenses. Following an evidentiary hearing, the trial court found that J.T. had violated his probation by failing to attend school on nine separate occasions. A dispositional hearing was held on December 13, 2002. Kevin Morgan, J.T.’s probation officer, testified that J.T. was not enrolled in school, had not paid the restitution, and had missed many of his TASC evaluation appointments. Morgan further testified that J.T. was not a candidate for intensive probation services because of his lack of cooperation. The trial court found that given J.T.’s history of delinquency, his parents’ unwillingness to cooperate and their inability to control him, and his repeated failure to cooperate, it was in the community’s best interest that it be protected from J.T.’s criminal behavior and that he be committed to the DOC. On appeal, J.T. argued, inter alia, that when the trial court sentenced him to probation, it failed to properly admonish him in accordance with Rule 605(b) (188 Ill. 2d R. 605(b)), and that the cause should be remanded so that he could file a motion to withdraw his admission and receive proper admonishments. J.T. acknowledged that he did not file a written motion to withdraw his plea or a notice of appeal, but argued that because juveniles have no right to postconviction relief, the appellate court should consider the merits of his claims in the interest of fairness. The State filed a motion to strike this argument, arguing that because J.T. did not file a timely notice of appeal, the appellate court was without jurisdiction to hear any issues relating to J.T.’s guilty plea. Following its previous decision in People v. Johnson, 332 Ill. App. 3d 81 (2002), the appellate court held that where the trial court has failed to give proper admonitions, the judgment may be attacked at any time. After noting that Rule 605(c) rather than Rule 605(b) applied because J.T. was sentenced pursuant to a negotiated plea, the appellate court found that the admonishments given by the trial court failed to substantially comply with the requirements of Rule 605(c). Specifically, the court found that the tried court failed to advise J.T. that: (1) he could have an attorney assist him in the preparation of postplea motions; (2) he was required to set forth the grounds for the withdrawal of admission to the petition in the motion to withdraw; and (3) he waived any grounds he did not raise in the motion; and (4) the State could reinstate any charges against him that were dismissed as part of the plea negotiations. Based on this finding and following its previous decision in People v. Johnson, 332 Ill. App. 3d 81 (2002), the appellate court remanded the cause to the circuit court so that J.T. could be properly admonished in accordance with Rule 605(c), and given the opportunity to file a motion to withdraw his admission to the petition under Rule 604(d). 347 Ill. App. 3d 533. We granted the State’s petition for leave to appeal (177 Ill. 2d R. 315), and J.T. cross-appeals. II. ANALYSIS A. Appellate Jurisdiction J.T. now concedes that the appellate court’s rationale for holding that a defendant may attack the judgment at any time when the trial court has failed to give proper admonitions was rejected in People v. Jones, 213 Ill. 2d 498 (2004), which overruled Johnson to the extent that it was inconsistent therewith on this issue. In Jones, the defendant entered a negotiated plea of guilty to murder and was sentenced to 20 years’ imprisonment. His pro se postconviction petition alleging ineffective assistance of counsel was summarily dismissed. On appeal from the dismissal, the defendant argued for the first time that the trial court had failed to properly admonish him pursuant to Rule 605 when it entered judgment on his guilty plea. The appellate court held that the defendant could not raise the issue of improper admonitions on appeal because he had failed to raise it in his petition. On appeal to this court, the defendant conceded that he had not included this issue in his petition, but argued, inter alia, that because the improper admonitions were akin to a void judgment, it could be raised at any time. We rejected this argument, holding that while the giving of improper admonitions constitutes error, it does not divest the circuit court of jurisdiction such that the conviction and sentence were rendered void. Jones, 213 Ill. 2d at 509, citing People v. Davis, 156 Ill. 2d 149, 156 (1993). While the appellate court’s determination in this case that a conviction and sentence entered in the absence of proper Rule 605(b) admonitions can be attacked at any time because it is akin to a void judgment is clearly incorrect under Jones, it suffers from a more fundamental flaw — the appellate court lacked jurisdiction to consider the admonishment issue. In noncapital cases an appeal is perfected by the timely filing of a notice of appeal, and it is this step which vests the appellate court with jurisdiction. 188 Ill. 2d R. 606(a). Except as provided in Rule 604(d), the notice of appeal must be filed with the clerk of the court within 30 days after the entry of the final judgment appealed from, or, if a motion directed against the judgment is timely filed, within 30 days after the entry of the order disposing of that motion. 188 Ill. 2d R. 605(b). Rule 604(d) requires that in order to appeal from a judgment entered upon a plea of guilty, a defendant must first file in the trial court a written motion to either withdraw his guilty plea or reconsider the sentence. 188 Ill. 2d R. 604(d). In such cases, the notice of appeal must be filed within 30 days of the denial of that motion. 188 Ill. 2d R. 605(b). The appellate court may also allow the filing of a late notice of appeal. 188 Ill. 2d R. 606(c). In the present case, J.T. did not file a timely notice of appeal from the order sentencing him to probation, a written motion to either withdraw his plea or reconsider his sentence, or a motion for leave to file a late notice of appeal. Consequently, the appellate court had no jurisdiction to consider any issues arising from either his guilty plea or his sentence. People v. Nordstrom, 37 Ill. 2d 270 (1967). B. Supervisory Relief As noted above, J.T. concedes that the rationale for the appellate court’s decision is no longer viable in light of Jones. He argues, however, that fundamental fairness requires this court to exercise its supervisory authority and either remand the cause to the trial court for proper Rule 605(b) admonitions, direct the appellate court to allow him to file a late notice of appeal, or hold that he can litigate this issue in a postconviction proceeding. Article VI, section 16, of our constitution vests this court with supervisory authority over all the lower courts of this state. Ill. Const. 1970, art. VI, § 16. Supervisory orders are disfavored and, as a general rule, this court will issue a supervisory order only if the normal appellate process will not afford adequate relief and the dispute involves a matter important to the administration of justice, or where intervention is necessary to keep an inferior court or tribunal from acting beyond the scope of its authority. People ex rel. Birkett v. Bakalis, 196 Ill. 2d 510 (2001). In considering the question of whether J.T. was prejudiced or denied real justice and therefore that “fundamental fairness” requires the court to grant supervisory relief, we find the rationale of People v. Henderson, 217 Ill. 2d 449 (2005), persuasive. In Henderson, we found that the defendant was not prejudiced by the trial court’s improper admonitions concerning the steps necessary to challenge his sentence on appeal because he raised no sentencing issues on appeal. Here, J.T. was admonished by the trial court, at the time he was placed on probation, that he had 30 days in which to appeal, and that if he wished to appeal he first had to file a petition with the trial court “to take everything back.” While these admonitions did not strictly comply with Rule 605(c), they were sufficient to put J.T. on notice that he could challenge his guilty plea, and that some action on his part within 30 days was necessary if he wished to appeal. J.T. took no action whatsoever, even though he appeared in court five times with counsel after he was placed on probation and before he was committed to the DOC. He did not file any pleading evidencing an intention to “take everything back,” he did not file a notice of appeal, nor did he seek leave to file a late notice of appeal. It was not until his probation was revoked and he was sentenced to the DOC that J.T. took any action to challenge his guilty plea or the conviction and sentence entered thereon. Further, the record demonstrates that J.T. is familiar with the criminal justice system. J.T. had nine previous station adjustments, 19 court referrals which included three findings of delinquency, five periods of probation, and six violations of probation. Moreover, J.T. was represented by counsel at the time he pled guilty and was sentenced to probation. J.T.’s argument that because of the faulty admonition he was unaware of his right to appeal or the steps necessary to preserve and exercise that right is unpersuasive. Rather, we conclude that he chose not to appeal because he was satisfied with his sentence. This is not a case where the normal appellate process cannot provide adequate relief, nor does it involve an issue important to the administration of justice. The normal appellate process could have provided adequate relief had J.T. availed himself of it. Having chosen not to, J.T. is in no different position than any other defendant who chooses not to file an appeal. Under these circumstances, supervisory relief is not warranted. Alternatively, J.T. requests this court to exercise its supervisory authority and address the issue of whether juveniles can seek relief under the Post-Conviction Hearing Act (725 ILCS 5/122 — 1 et seq. (West 2004)). We decline to do so for the same reasons we declined to address this issue in In re William M., 206 Ill. 2d 595 (2003). As in William M., the parties offer minimal argument on this issue. As Justice Kilbride noted in his special concurrence in that case, “[a] question of such magnitude should be fully briefed and argued by opposing parties zealously advocating the relevant arguments prior to its definitive resolution by this court.” William M., 206 Ill. 2d at 607-08 (Kilbride, J., specially concurring). C. Sentencing In his cross-appeal, J.T. argues that if he remained incarcerated until his twenty-first birthday, as permitted under section 5 — 750(3) of the Juvenile Court Act of 1987 (705 ILCS 405/5 — 750(3) (West 2002)), he would have served a sentence greater than that which an adult would have had to serve for the same offense, in violation of section 5 — 710(7) (705 ILCS 405/5 — 710(7) (West 2002)). He urges this court to exercise its supervisory authority and order the trial court to modify its dispositional order to provide that the maximum time he could spend in the custody of the DOC was three years. J.T. concedes that because he was released to the custody of his parents on March 19, 2003, and discharged from parole on May 28, 2004, this issue is moot. He argues, however, that this court should nevertheless address the issue under certain exceptions to the mootness doctrine. It is a basic tenet of justiciability that reviewing courts will not decide moot or abstract questions or render advisory opinions. People ex rel. Sklodowski v. State, 162 Ill. 2d 117, 130 (1994), quoting Barth v. Reagan, 139 Ill. 2d 399, 419 (1990). An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party. In re Tekela, 202 Ill. 2d 282, 292-93 (2002). A reviewing court may nevertheless review an otherwise moot issue pursuant to the public interest exception to the mootness doctrine. Richardson v. Rock Island County Officers Electoral Board, 179 Ill. 2d 252, 256 (1997). Application of the public interest exception requires (1) the existence of a question of public importance; (2) the desirability of an authoritative determination for the purpose of guiding public officers in the performance of their duties; and (3) the likelihood that the question will recur. In re Andrea F., 208 Ill. 2d 148, 156 (2003). Another exception to the mootness doctrine exists for cases involving events of short duration that are “ ‘ “capable of repetition, yet evading review.” ’ ” In re A Minor, 127 Ill. 2d 247, 258 (1989), quoting Madison Park Bank v. Zagel, 91 Ill. 2d 231, 236 (1980), quoting Sosna v. Iowa, 419 U.S. 393, 399-400, 42 L. Ed. 2d 532, 540, 95 S. Ct. 553, 557 (1975). For this exception to apply, there must be a reasonable expectation that the same complaining party would be subject to the same action again and the action challenged must be of such short duration that it cannot be fully litigated prior to its cessation. In re India B., 202 Ill. 2d 522, 543 (2002). These exceptions are to be construed narrowly and require a clear showing of each criterion to bring the case within the terms. In re Adoption of Walgreen, 186 Ill. 2d 362, 365 (1999). Neither exception applies in this case. The exception for cases of short duration evading review does not apply because it is unlikely that J.T. will be subject to the same action again. Even if he were, he could obtain review by filing a timely notice of appeal. With respect to the public interest exception, we agree that the question of how long a minor will remain incarcerated in the DOC, or subject to parole restrictions or the custodianship of the DOC, is a question of public importance, but conclude that there is no need for an authoritative determination for the purpose of guiding public officers in the performance of their duties. Cases addressing this issue have uniformly held that dispositional orders must include a limitation on the period of commitment so that it does not exceed the maximum period of incarceration for an adult committing the same offense. See In re K.S., 354 Ill. App. 3d 862, 864 (2004); In re S.M., 347 Ill. App. 3d 620, 627 (2004); In re C.L.P., 332 Ill. App. 3d 640, 645 (2002); In re Jesus R., 326 Ill. App. 3d 1070, 1072 (2002). Consequently, we decline to employ the public interest exception to reach this issue. Finally, J.T. argues that he is entitled to a 31-day credit for time spent in custody prior to his commitment to the DOC. Again, because J.T. has already been discharged from probation, this issue is moot. Unlike the previous issue, however, there is a conflict among the districts of our appellate court on this issue, and we will therefore address it pursuant to the public interest exception. In In re E.C., 297 Ill. App. 3d 177, 180 (1998), the Fourth District held that a juvenile who is sentenced to an indeterminate term is entitled to predisposition credit. In In re J.J.M., 299 Ill. App. 3d 327 (1998), however, the Second District declined to follow E.C., holding that proceedings under the Act were not criminal and that juvenile offenders were not given “sentences” as in criminal proceedings. In re J.J.M., 299 Ill. App. 3d at 330-32. In Jesus R., the Fourth District reaffirmed its holding in E.C. The court specifically declined to follow J.J.M., noting that the Act itself referred to provisions of the Unified Code of Corrections to determine proper terms of juvenile commitment to the DOC and afforded juveniles the same procedural protections as adult criminals. In re Jesus R., 326 Ill. App. 3d at 1073-74. In In re Jermaine J., 336 Ill. App. 3d 900 (2003), the Third District agreed with the Fourth District, holding that a juvenile was entitled to credit for time spent in predisposition custody against an indeterminate commitment. In addition to E.C. and Jesus R., the court relied on its previous decision in In re B.L.S., 325 Ill. App. 3d 96 (2001), that juveniles adjudicated as habitual offenders and sentenced to a determinate term pursuant to section 5 — 815(f) of the Act were entitled to predisposition credit. In re Jermaine J., 336 Ill. App. 3d at 903-04. In B.L.S., the Third District reasoned that while the Act does not expressly provide for credit against commitment for the time a juvenile spends in predisposition detention, it does provide that juveniles shall have all of the procedural rights of adults in criminal proceedings, and that adults receive presentence custody credit against determinate sentences. The court further reasoned that denying juveniles credit for predisposition detention would contravene the spirit of section 5 — 710(7)’s provision that juveniles not be committed to the DOC for a period in excess of that period for which an adult would be committed for the same act. In re B.L.S., 325 Ill. App. 3d at 99-100. In affirming the decision in B.L.S., this court noted that “[n]o thing in the Code restricts [application of the credit against sentence requirement of] section 5 — 8— 7(b) to adult offenders” and that there was “no rationale for denying a juvenile credit against a determinate sentence for time spent in predisposition custody.” In re B.L.S., 202 Ill. 2d 510, 518 (2002). Accordingly, we concluded that “the legislature intended that the rules for calculating the term of imprisonment for an offender sentenced to a determinate sentence are applicable to an habitual juvenile offender.” In re B.L.S., 202 Ill. 2d at 518. We noted that this holding was consistent with In re A.G., 195 Ill. 2d 313 (2001), wherein we held that compliance with Supreme Court Rule 604(d) was required in juvenile proceedings. In A.G., we noted that recent amendments to the Act “ ‘represented] a fundamental shift from the singular goal of rehabilitation to include the overriding concerns of protecting the public and holding juvenile offenders accountable for violations of the law,’ ” and that “ ‘virtually all of the constitutional requirements of a criminal trial have been introduced into juvenile delinquency proceedings.’ ” In re B.L.S., 202 Ill. 2d at 519, quoting In re A.G., 195 Ill. 2d at 317, 319. In In re K.S., the Fifth District followed the Third and Fourth Districts, holding that fundamental fairness required that minors committed to the DOC for an indeterminate term be given predisposition credit. The court expressed its doubt as to the continuing validity of the reasoning in J.J.M. in light of this court’s reasoning in In re B.L.S. In re K.S., 354 Ill. App. 3d at 867. As we noted in B.L.S., public safety and punishment are now the overriding concerns of the juvenile justice system, and an incarcerated juvenile’s liberty is restrained just as effectively as that of an adult offender. We can conceive of no reason why the rationale of B.L.S. should not apply to the present case. Accordingly, we hold that a juvenile who is committed to the DOC for an indeterminate term with the maximum sentence of a term of years not to exceed the period an adult would serve for the same offense is entitled to predisposition credit. rv: conclusion We hold that because J.T. failed to timely perfect an appeal from the order sentencing him to probation, the appellate court had no jurisdiction to consider the issue of whether the cause should bé remanded for proper Rule 605 admonitions. We find that supervisory relief is not appropriate in this case, and that the issue of whether the trial court’s sentencing order should be modified is moot. Finally, we hold that a juvenile who is committed to the DOC for an indeterminate term with the maximum sentence of a term of years not to exceed the period an adult would serve for the same offense is entitled to predisposition credit. For the foregoing reasons, the judgment of the appellate court is vacated. Appellate court judgment vacated.