No. 2—10—0103
Opinion filed April 28, 2011

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MERRILEE M., Alleged to be a Person Subject to Involuntary Admission | ) ) ) ) ) | Appeal from the Circuit Court of Kane County.<br><br>No. 09—MH—172 |
| (The People of the State of Illinois, Petitioner-Appellee, v. Merrilee M., Respondent-Appellant). | ) ) ) ) | Honorable Susan Clancy Boles, Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Bowman and Burke concurred in the judgment and opinion.

**OPINION**

Respondent, Merrilee M., appeals from the trial court's ruling that she be involuntarily admitted to the Department of Human Services pursuant to section 3—600 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3—600 (West 2008)). Respondent argues that the trial court's order should be vacated because it applied an unconstitutional standard when finding that she was a person subject to involuntary admission. For the reasons that follow, we vacate the trial court's order.

BACKGROUND

On November 23, 2009, a petition for respondent's involuntary admission to Elgin Mental Health Center (EMHC) was filed with the trial court. Following a hearing, the trial court granted the

petition and found respondent to be subject to involuntary admission for 90 days. Respondent then brought this timely appeal.

ANALYSIS

Before addressing the merits of respondent's contentions on appeal, we must first address the issue of mootness.

This appeal is moot because the 90-day period covered by the trial court's order has already expired. *In re Robert S.*, 213 Ill. 2d 30, 45 (2004). "An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party." *In re J.T.*, 221 Ill. 2d 338, 349-50 (2006). Generally, courts of review do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998). Reviewing courts, however, recognize exceptions to the mootness doctrine, such as (1) the public-interest exception, applicable where the case presents a question of public importance that will likely recur and whose answer will guide public officers in the performance of their duties, (2) the capable-of-repetition exception, applicable to cases involving events of short duration that are capable of repetition, yet evading review, and (3) the collateral-consequences exception, applicable where the involuntary admission order could return to plague the respondent in some future proceedings or could affect other aspects of the respondent's life. *In re Alfred H.H.*, 233 Ill. 2d 345, 355-62 (2009); *J.T.*, 221 Ill. 2d at 350; *In re Wathan*, 104 Ill. App. 3d 64, 65-66 (1982).

The collateral-consequences exception applies here. The record reveals that, prior to her admission, respondent was employed as a registered nurse. As such, her license was automatically

suspended upon the determination that she was subject to involuntary admission. 225 ILCS 65/70—5(c) (West 2008). Her license may be reinstated only upon a court's finding that she is no longer subject to involuntary admission and upon the Board of Nursing's recommendation for reinstatement. 225 ILCS 65/70—5(c) (West 2008). Although there is a procedure by which respondent may regain her license, we conclude that the suspension of her license and the necessity of seeking the reinstatement of that license are sufficiently significant collateral consequences to warrant a review of respondent's contention on appeal.

The State contends that any negative employment consequences of the suspension of respondent's license are overshadowed by the negative employment consequences of respondent's being fired from her last job and being investigated by the Du Page County sheriff's department for employment-related activities. The record does not support the State's contentions. Respondent testified that she was not fired from her last job; rather, the family to which she was assigned by her nursing agency asked her not to come back due to her making a report with the Department of Children and Family Services. Dr. Syed Waliuuddin, a staff psychiatrist at EMHC, testified that respondent had hinted that she was fired, but that respondent did not provide any details of what actually happened. Similarly, there is no definitive indication in the record that respondent was being investigated by the sheriff's department for employment-related activities. Rather, the State simply asked respondent whether she had spoken with investigators from the sheriff's department regarding her departure from her last job. Respondent stated that any conversations that occurred were between her and the sheriff's department. Nothing indicates that respondent did, in fact, speak with the sheriff's department and that, if she did, the conversations were a result of her being investigated for employment-related activities.

Turning to the merits, respondent contends that the trial court's order for her involuntary admission should be vacated as void because the trial court relied on a standard that previously had been held unconstitutionally vague. The petition for involuntary admission alleged that respondent was mentally ill and, because of that illness, she was (1) reasonably expected to engage in dangerous conduct (see 405 ILCS 5/1—119(1) (West 2008)) and (2) unable to understand her need for treatment and, if she were not treated, she would be expected to suffer mental and emotional deterioration to the point that she would reasonably be expected to engage in dangerous conduct (see 405 ILCS 5/1—119(3) (West 2008)). The trial court found "that the evidence is clear and convincing that as a result of this mental illness, [respondent] is reasonably expected to engage in dangerous conduct which may include threatening behavior or conduct that places her or another individual in reasonable expectation of harm." According to respondent, because the definition of "dangerous conduct" that was in effect at the time of the trial court's decision previously had been found to be unconstitutionally vague (*In re Torski C.*, 395 Ill. App. 3d 1010 (2009)), the trial court's order holding her to be subject to involuntary admission on the basis that she was reasonably expected to engage in dangerous conduct must be vacated as void.

The State argues that respondent has forfeited this contention by failing to raise it in the trial court. We disagree. Before beginning her closing argument, respondent's attorney stated that she objected to a decision based on section 1—119(3) of the Code because of the *Torski* decision. We believe that this was sufficient to put the State and the trial court on notice that respondent was challenging involuntary admission on the basis that she was reasonably expected to engage in dangerous conduct. Moreover, respondent's failure to raise the issue in a posttrial motion does not

result in forfeiture, as a posttrial motion is not required in nonjury proceedings. Ill. S. Ct. R. 366(b)(3)(ii) (eff. Feb. 1, 1994).

When the petition was filed, the Code defined a person subject to involuntary admission as follows:

"(1) A person with mental illness and who because of his or her illness is reasonably expected to engage in dangerous conduct which may include threatening behavior or conduct that places that person or another individual in reasonable expectation of being harmed;

(2) A person with mental illness and who because of his or her illness is unable to provide for his or her basic physical needs so as to guard himself or herself from serious harm without the assistance of family or outside help; or

(3) A person with mental illness who, because of the nature of his or her illness, is unable to understand his or her need for treatment and who, if not treated, is reasonably expected to suffer or continue to suffer mental deterioration or emotional deterioration, or both, to the point that the person is reasonably expected to engage in dangerous conduct."

405 ILCS 5/1—119 (West 2008).

"Dangerous conduct" was defined as "threatening behavior or conduct that places another individual in reasonable expectation of being harmed, or a person's inability to provide, without the assistance of family or outside help, for his or her basic physical needs so as to guard himself or herself from serious harm." 405 ILCS 5/1—104.5 (West 2008).

Respondent contends that the trial court's order that she be involuntary admitted should be vacated because the definition of "dangerous conduct" is unconstitutionally vague. In support of her argument, respondent relies exclusively on *Torski*. In *Torski*, the State sought, and was granted, the

involuntary admission of the respondent based on section 1—119(3) of the Code. *Torski*, 395 Ill. App. 3d at 1014, 1017. On appeal, the respondent argued, among other things, that the definition of "dangerous conduct" found in section 1—104.5 of the Code was unconstitutionally vague. *Torski*, 395 Ill. App. 3d at 1018. The Fourth District agreed, holding that the definition of "dangerous conduct" encompassed conduct that would not constitutionally support the liberty deprivation associated with involuntary admission. *Torski*, 395 Ill. App. 3d at 1024-25. The court also held that the definition allowed for the arbitrary application of the statute to mentally ill individuals who engaged in merely unusual or annoying behavior. *Torski*, 395 Ill. App. 3d at 1025. Accordingly, the Fourth District vacated the order of involuntary admission, because it was based on section 1—119(3) of the Code, which incorporated the term "dangerous conduct" as defined in section 1—104.5 of the Code. *Torski*, 395 Ill. App. 3d at 1027.

Having reviewed and carefully considered the matter, and for the reasons stated in *Torski*, we conclude that the Fourth District correctly held that the definition of "dangerous conduct" found in section 1—104.5 of the Code is unconstitutionally vague.[1] Accordingly, the order for respondent's involuntary admission must be vacated. We note that, although the respondent in *Torski* was involuntarily admitted based on section 1—119(3) of the Code while the trial court here relied on section 1—119(1), both section 1—119(1) and section 1—119(3) require a finding that the respondent is reasonably expected to engage in dangerous conduct, as defined in the unconstitutional

---

[1] The supreme court allowed an appeal in *Torski* and then dismissed the appeal as moot on September 15, 2010 (*In re Torski C.*, No. 109623 (Sept. 15, 2010) (minute order)), in light of the legislature's passage of new language in section 1—119 (see Pub. Act 96—1399 (eff. July 29, 2010) (amending 405 ILCS 5/1—119 (West 2008))).

section 1—104.5. Thus, respondent's admission may not be sustained under either section 1—119(1) or section 1—119(3).

## CONCLUSION

For the above-stated reasons, the judgment of the circuit court of Kane County is vacated.

Vacated.